RONALD RUSSO ET AL. *v.* TOWN OF WATERTOWN ET AL.

BOGDANSKI, PETERS, HEALEY, ARMENTANO and WRIGHT, Js.

Argued December 4, 1980—decision released May 5, 1981

*Franklin G. Pilicy,* for the appellants (plaintiffs).

*James P. Caulfield,* for the appellees (defendants).

ARTHUR H. HEALEY, J. The plaintiffs, Ronald Russo and Charles Taylor, are citizens, residents, taxpayers and voters of the town of Watertown. They instituted this action seeking a determination of the validity of certain charter revisions passed by the town in 1978. The defendant Watertown town council is the legislative governing body of the town of Watertown.

On January 30, 1978, the town council established the charter revision commission for the purpose of revising the town charter pursuant to chapter 99 of the General Statutes. The town council provided the commission with seven charges with regard to areas in which charter revision might be considered by the commission.

The charter revision commission held ten meetings, including a last regular meeting held June 29, 1978. Pursuant to General Statutes § 7-190, the council had directed the commission to report back to the council by June 30, 1978.

On July 5, 1978, the chairman of the charter revision commission submitted a report to the town council containing the answers to the charges given to the commission. While the substance of the chairman's summary was agreed to by the commission, the proposals actually submitted had never been formally approved by the commission.

Following a July 19, 1978 public hearing concerning the proposed charter revisions, the Watertown town council approved an amended version of the

charter revisions. The council published the amended revisions in the Watertown Town Times on August 24, 1978, pursuant to General Statutes § 7-191. On August 30, 1978, the town council voted to present the proposed charter revisions to the voters in the regular state election on November 7, 1978.

At the November 7, 1978 referendum, the Watertown voters approved five of the seven charter revision questions presented. The charter revisions provided for an effective date of February 1, 1979.

The plaintiffs instituted the present action on November 27, 1978. Their complaint originally sought a declaration that all or some of the charter revisions be determined to be null and void, and a temporary injunction ordering the town not to put said changes into effect during the pendency of the action.[1] At the beginning of trial, the plaintiffs, as they note in their brief, waived their claim for temporary relief.[2] Thus, essentially what the plaintiffs

[1] The complaint also asked for "[s]uch other equitable relief as is just and appropriate in the circumstances."

[2] There was a colloquy between the court and counsel at the outset of the trial concerning the plaintiffs' claim for temporary relief. It discloses that counsel for the plaintiffs was aware that charter amendments approved by the voters on November 7, 1978, were to go into effect on February 1, 1979. Plaintiffs' counsel indicated to the court that "if February 1st comes along" and the case has not been completed or a decision rendered, then he reserved the right to renew a claim for a hearing on temporary relief. The court then indicated that it understood that in not pressing the claim for temporary relief at that time, counsel was taking the position that "in the event that this case is not completed at the time the proposed charter revision goes into effect, you would then need a temporary injunction" to prevent the charter revision amendments from going into effect.

The court's decision finding for the defendants was filed on February 9, 1979. There is nothing in the record before us to show that the plaintiffs took any action, e.g., by pressing a claim for injunctive relief, to prevent the charter revision amendments from going into effect on February 1, 1979.

sought from the trial court was a judgment declaring that the revisions of the town charter were null and void.

The trial court, *Driscoll, J.,* held that the plaintiffs, as residents, taxpayers, and voters of the town of Watertown, had no standing to sue. Nevertheless, not stopping there, it went on to decide the merits of the case, and rendered judgment for the defendants. From this judgment, the plaintiffs have appealed, claiming that the court erred in holding that they had no standing to sue, and in deciding the merits in favor of the defendants. We need not reach either of these claims since we conclude that the court was without jurisdiction to entertain the case.

An action for declaratory judgment is a special proceeding under General Statutes § 52-29, implemented by Practice Book §§ 389 through 391. See *Kiszkiel* v. *Gwiazda,* 174 Conn. 176, 180, 383 A.2d 1348 (1978); *McAnerney* v. *McAnerney,* 165 Conn. 277, 283, 334 A.2d 437 (1973). Section 390(d) requires that all persons having an interest in the subject matter of the complaint be parties to the action or have reasonable notice thereof. See *Pinnix* v. *LaMorte,* 182 Conn. 342, 343, 438 A.2d 102 (1980). This court has consistently required strict adherence to this rule. *Hopkins* v. *Pac,* 176 Conn. 318, 319, 407 A.2d 979 (1978); *Cavalli* v. *McMahon,* 174 Conn. 212, 215–16, 384 A.2d 374 (1978); *Gannon* v. *Sanders,* 157 Conn. 1, 5, 244 A.2d 397 (1968). "A failure to comply with § 309(d) [now § 390(d)] is a jurisdictional defect and, as such, can be raised even on appeal by the court itself." *Manley* v. *Pfeiffer,* 176 Conn. 540, 545, 409 A.2d 1009 (1979); see *Pinnix* v. *LaMorte,* supra; *State ex rel. Kelman* v. *Schaffer,* 161 Conn. 522, 527, 290 A.2d 327 (1971).

Section 390 (d) is not merely a procedural regulation, "[i]t is in recognition and implementation of the basic principle that due process of law requires that the rights of no man shall be judicially determined without affording him a day in court and an opportunity to be heard." *Benz* v. *Walker*, 154 Conn. 74, 77, 221 A.2d 841 (1966).[3] It is clear that residents of the town of Watertown, who are not parties to the action, may have a legitimate interest in the outcome of the present case, and they were entitled to notice. See *Cavalli* v. *McMahon*,[4] supra,

[3] We have stated: " 'It is the settled rule of this jurisdiction, if indeed it may not be safely called an established principle of general jurisprudence, that no court will proceed to the adjudication of a matter involving conflicting rights and interests until all persons directly concerned in the event have been actually or constructively notified of the pendency of the proceeding, and given reasonable opportunity to appear and be heard. This firmly fixed limitation, which, in effect if not technically in all cases, is a jurisdictional one, is as binding in English practice as it is with us.' " *Manafort Bros., Inc.* v. *Kerrigan*, 154 Conn. 112, 114, 222 A.2d 218 (1966); see *Benz* v. *Walker*, 154 Conn. 74, 77, 221 A.2d 841 (1966); *Corsino* v. *Grover*, 148 Conn. 299, 309, 170 A.2d 267 (1961); *Ackerman* v. *Union & New Haven Trust Co.*, 91 Conn. 500, 508, 100 A. 22 (1917).

[4] In *Cavalli* v. *McMahon*, 174 Conn. 212, 384 A.2d 374 (1978), the two plaintiffs filed a complaint seeking a declaratory judgment declaring § 30.2 of the Fairfield zoning regulations null and void, and a writ of mandamus ordering the zoning enforcement officer to certify to the liquor control commission that the town did not prohibit the sale of alcoholic beverages under a restaurant permit for wine and beer only at the plaintiffs' premises. Although *Cavalli* reserved certain questions for our consideration and advice, we said that "although the plaintiffs sought relief in the form of a declaratory judgment, the record reveals no attempt to notify anyone other than the named defendants of the pending action." *Cavalli* v. *McMahon*, supra, 215. After noting that we have consistently required strict adherence to Practice Book, 1963, § 309(d) (now Practice Book § 390 [d]), we pointed out: "It is clear . . . that residents of Fairfield, who are not parties to the action, may have a legitimate interest in the outcome, and they are entitled to notice. It should not be up to the plaintiffs to determine that notice is unnecessary. See *Gannon* v. *Sanders*, [157 Conn. 1, 244 A.2d 397 (1968)]." *Cavalli* v. *McMahon*, supra, 216.

216; *Wenzel* v. *Danbury*,[5] 152 Conn. 675, 677, 211 A.2d 683 (1965). "Simply stated, '[a]nyone with an interest in the subject matter is entitled to reasonable notice and an opportunity to be heard, whether he supports the plaintiffs' or the defendants' position.'" *Hopkins* v. *Pac,* supra, 319, citing *Cavalli* v. *McMahon,* supra, 216. Since the record does not indicate that all persons having a legitimate interest in the subject matter are parties to the action or were given reasonable notice thereof, the trial court was without jurisdiction.

There is error, the judgment is set aside and the case is remanded with direction to dismiss the action for lack of jurisdiction.

In this opinion the other judges concurred.

---

[5] In *Wenzel* v. *Danbury,* 152 Conn. 675, 211 A.2d 683 (1965), the plaintiffs brought a declaratory judgment action, which also sought injunctive and other relief. The plaintiffs challenged the constitutionality of a portion of the Home Rule Act (then General Statutes c. 99), and attacked the validity of an ordinance alleged to have been illegally adopted by the town and city of Danbury under then General Statutes §§ 7-195 and 7-197 of the Home Rule Act. We affirmed the trial court's dismissal of the action on the ground that the court lacked jurisdiction, although the trial court so concluded on another theory. We repeated our earlier insistence on strict observance of Practice Book, 1963, § 309 (d) (now Practice Book § 390 [d]), and noted that the plaintiffs "made no attempt to conform to Practice Book § 309 (d), and no notice of any kind was ordered or given." *Wenzel* v. *Danbury,* supra, 677. In discussing the necessity for notice, we observed that a judgment declaring invalid the ordinance consolidating the town and city of Danbury might adversely affect the interests of many citizens, not only those who would support the plaintiffs' position but also those many who would oppose that position since a majority voted in favor of the ordinance. Our opinion in *Wenzel* recognized that it would, of course, be impractical to require that all of them be made parties to the action, and that in such a situation the requirement of reasonable notice applied. *Wenzel* v. *Danbury,* supra; see *National Transportation Co.* v. *Toquet,* 123 Conn. 468, 474, 196 A. 344 (1937).